Georgia Hanlon, Appellee, v. W. F. Lindberg, Appellant.

Gen. No. 9,832.

2

Opinion filed April 28, 1943.

ARTHUR H. SHAY, of Streator, and CLARENCE W. HEYL, of Peoria, for appellant.

CHARLES F. SHORT, JR., of Chicago, for appellee.

MR. PRESIDING JUSTICE HUFFMAN delivered the opinion of the court.

This is an action by appellee to recover for personal injuries sustained in an automobile accident, while she was riding as a guest with appellant in his car. Trial resulted in verdict for appellee in the sum of $3,500. Appellant brings this appeal from judgment thereon.

Appellant argues that the court erred in refusing to direct a verdict for defendant; that the damages are

excessive; that the court admitted improper testimony on behalf of plaintiff; that the verdict is against the manifest weight of the evidence; and that the court erred in refusing defendant's instruction No. 18.

The accident occurred on U. S. Highway No. 52, at about 4:30 in the afternoon, on September 4, 1938. The highway runs east and west, and is straight and level for several miles in each direction from the place of the accident. Five persons were riding with defendant at the time. They were his wife, the appellee, Louis Krantz, Henry Krause and Arthur Imme.

Appellee and her husband operated a trailer camp near the town of Serena, and some two or three miles off of highway No. 52. Appellant and his wife were stopping at this camp for a few days. They invited appellee to go to Serena with them. On the return trip to the camp, appellee was riding on the left side of the rear seat in company with Louis Krantz and Arthur Imme. Appellant, Mrs. Lindberg, and Henry Krause were riding in the front seat. Appellant was driving his car. As he was proceeding west, on route No. 52, he passed the road where he should have turned off to go to the camp. Appellee told him to continue on west on route No. 52, until he came to the next road to his right, and to take this road and that it would bring them to the camp. Thereupon appellant continued westward on route No. 52, for a short distance, when he suddenly turned his car to the left across the paved highway toward the shoulder on the south side of the road in order that he might turn the car around and proceed back east to the road to the camp, which he had failed to take.

Appellee states she had no knowledge of appellant's intent to turn his car across the road, and that the first thing she knew with respect to the situation was when Mr. Krantz shouted to appellant, "that he couldn't make it;" and that she then heard an automobile horn sounded. While appellant was in the act of turning

his car across the highway, a car approaching from the rear struck his car at the left rear wheel. Appellee was nearest the point of impact between the cars, and was quite severely injured. She was in the hospital seven weeks, and later confined to her residence for some weeks before she was able to return to her place of employment, where she had worked since 1923.

The witnesses, Krantz and Imme, who were also occupants of the rear seat, state that appellee advised appellant when he failed to take the first road to the camp, to proceed on west on route No. 52, until he came to the next road to the right and that this road would bring them to the camp; and that appellant continued westward on route No. 52. The witness Krantz states that as soon as he noticed appellant manifesting an intent to turn his car across the highway, that he called to him saying, ''Doc, you can't make it;'' that at such time, the car approaching from the rear was from 50 to 70 feet from appellant's car; that it was traveling faster than appellant's car; that appellant continued to turn his car across the pavement in front of the car just behind, and the impact between the cars immediately followed; with the left front portion of the approaching car striking the left rear wheel and fender of appellant's car.

The witness Imme, the other occupant of the rear seat, says that he had no warning of appellant's intention to turn the car across the pavement until he heard Krantz call out; that appellant continued to turn his car and the collision occurred. He states that when Krantz called out to appellant, his car was then still in its proper traffic lane.

The witness Krause, who was riding in the front seat with appellant and Mrs. Lindberg, says that he heard the conversation with respect to appellant running by the first road to the camp, and that he should continue on west to the next road to the right and take that road to the camp. He states that appellant con-

tinued on west for a short distance when, without any warning, he made a quick turn across the highway to the south; that he heard someone in the back seat call out to appellant to keep going, that he couldn't make it, and that immediately thereafter, he heard the crash.

Appellant denies that anyone in the car gave any alarm or advised him that he could not make the turn across the road. He says he heard no car and saw no car approaching from the rear until he had started to turn his car across the road, when he heard the squeal of brakes and tires skidding on the pavement.

It appears from the testimony of the highway policeman who was at the scene of the accident, that neither car was severely damaged, and each proceeded under its own power, following the collision.

From a review of the evidence, we are not of the opinion the trial court erred in refusing to direct a verdict for the defendant, or that the damages are excessive, or that the verdict is against the weight of the evidence. This leaves for consideration the question of improper testimony on behalf of plaintiff, and defendant's refused instruction No. 18.

Moving pictures were introduced in evidence on behalf of appellant. They were taken by the witness, David R. Tomei. This witness states that he and his brother compose the Reliable Service Company, and that the taking of the pictures were by such company. After qualifying himself as an operator of the picture machine, he proceeded to testify concerning the taking of the pictures and laying the foundation for their admission in evidence.

It appears from his testimony that he and his brother came from Chicago, to Streator, Illinois, where appellee was identified, and that thereafter, with his brother driving the car, he proceeded to take the pictures of appellee at such times and places as were convenient. They were exhibited before the jury by this witness.

On cross-examination of appellant, he was asked if he knew anyone connected with the Reliable Service Company located in Chicago. It appeared appellant was not acquainted with this company. He objects to the above cross-examination on the ground that it injected into the case the fact of an insurance carrier being interested. We do not find any reference made to insurance or insurance company. Neither do we find any objection was interposed to this cross-examination of appellant at the time the same was made. The record discloses that on the following day, before resuming trial, attorneys for appellant stated to the court they wished to enter an objection to the above portion of the cross-examination of the defendant on the ground that it was designed to inform the jury that someone other than the defendant was interested in his defense to the suit, and that by necessary inference, it could not be other than an insurance company.

Upon the jury coming in, and on motion of appellant, the court instructed them not to consider any of the evidence on cross-examination of appellant with reference to the Reliable Service Company, and the taking of the pictures by such company. Appellant's motion to withdraw juror was denied.

We do not consider the court erred in the above respect. The witness Tomei was called by the defendant. A witness' interest or connection in a case may be shown. One of appellant's instructions to the jury in this case was to the effect that such was a proper circumstance for its consideration in weighing a witness' testimony. If an insurance carrier elects to cause moving pictures to be taken of a plaintiff, for the purpose of evidence, without the knowledge or cooperation of the party for whose benefit they are to be used, it must accept the situation it has created and the natural consequences that may flow therefrom. When a stranger is thus brought into the trial of a

case as a witness, an insurance carrier cannot be heard to object when the interest or connection of such witness to the case is gone into. Furthermore, we are of the opinion the objections interposed by appellant should have been made at the time of the examination of the witness, and in this instance, came too late.

Appellant objects to testimony on behalf of appellee to the effect that he stated to the surgeon, Dr. Graham, he would pay for her medical care and treatment. The doctor states that when the parties came to his office with appellee, appellant asked him to take care of her and send him the bill. The witness Imme says that he was present and heard appellant make such statement to the doctor. Appellee testifies that appellant said he was responsible for the accident and wanted to be responsible for the bills.

Appellant urges that such evidence was prejudicial and the admission thereof error, on the ground that disputed offers of compromise are not admissible. We do not consider the testimony of such a character. It in no way partook of any attempt by the parties to effect a compromise of a disputed claim. Such declarations of an adverse party are generally admissible against him. Where the parties are strangers under the law, and the one charged with being the wrongdoer, promises to pay or does pay for hospital and medical care, it is a proper circumstance for the consideration of the jury. *Sullivan v. Heyer,* 300 Ill. App. 599, 601. Such statements are considered a circumstance which by way of outward conduct reflect the mental state beneath. We do not consider the court erred in the admission of this testimony.

Instruction No. 18 is as follows:

"If after considering all the evidence in this case, you find any witness has knowingly and wilfully testified falsely to any fact material to the issues in this case, then you have the right to disregard the testimony of such witness, except insofar as corroborated

by other credible evidence or facts and circumstances in evidence."

Appellant states no other instruction on the above subject was given, and urges the court erred in refusing this instruction. Appellant tendered thirty-three instructions. Appellee tendered one.' We find no instruction telling the jury what facts were material to the issues in the case. Under such circumstances, the court did not err in refusing the instruction. *People v. Wells,* 380 Ill. 347, 357.

The judgment herein is affirmed.

*Judgment affirmed.*