*In re* MARRIAGE OF RONALD R. SLAVENAS, Petitioner-Appellee, and ROSEMARIE D. SLAVENAS, Respondent-Appellant.

Second District   No. 84—1094

Opinion filed December 30, 1985.

Charles L. Fierz, P.C., of Sycamore, for appellant.

Jon L. Cromley, of O'Grady & Cromley, of Genoa, for appellee.

JUSTICE STROUSE delivered the opinion of the court:

Respondent, Rosemarie Slavenas, appeals from the judgment of the circuit court of DeKalb County which awarded custody of Marcus, then age 14, to petitioner, Ronald Slavenas, and custody of Brian, then age 11, to respondent. Respondent only appeals from the award of Marcus to the petitioner.

Petitioner, a social worker, and respondent, an assistant professor

of education, were married in Chicago on September 29, 1966. Two children were born of this marriage: Marcus and Brian. After the parties had separated, respondent had custody of both children subject to an agreement. Thereafter, petitioner filed a petition for dissolution of marriage on August 23, 1983. At that time, he also filed a petition for and was granted temporary custody of Marcus. On August 24, 1983, respondent filed a petition for dissolution of marriage. She also filed a motion to dissolve the temporary custody order, which was denied. The marriage was dissolved on August 1, 1984. In an opinion letter, the court found that it was in the best interest of all the parties, including the husband, wife and each of the children, that Marcus remain with his father and Brian remain with his mother. Visitation was to be liberal and arranged so that the children would spend a considerable amount of time together.

During the temporary custody hearing, respondent and petitioner agreed to an investigation of the family situation for use in the final determination of permanent custody. An investigation was never arranged by either of the litigants nor was it ordered by the court. At the temporary custody hearing the court volunteered to question the children *in camera*. Both counsel were present, a court reporter could not be found and the interview occurred after waiving the court reporter's presence.

Both petitioner and respondent testified at the permanent custody hearing. Petitioner testified that Marcus requested to live with him. Petitioner felt that this was in Marcus' best interest because of their close relationship, the security and lack of tension. Petitioner also testified that Marcus' relationship with his mother was stressful. Marcus testified that he wished to live with his father and brother. He also stated that he had problems relating to his mother.

Respondent testified that Marcus wanted to live with his father. She felt this was because Marcus' activities would not be limited. Respondent also stated that the children often fought with each other. There was one incident where Brian locked himself in a room and Marcus put a screwdriver through the door. However, respondent felt that the fighting had stopped. Respondent related another incident at the hearing involving Marcus' alleged use of drugs. She stated that Marcus' behavior on one occasion was volatile. However, on rebuttal, petitioner stated that on the day in question, Marcus had taken some Sudafed and he did not believe Marcus would have taken drugs.

Maurine Patten, a registered psychologist, testified on behalf of respondent. In her opinion, she believed that respondent was a capable parent and would be able to handle both children. However, al-

though she had seen Brian once, she had never interviewed or observed Marcus. Georgia Scriven, a professor for early childhood education and a peer of respondent, also testified. She felt that respondent was a fit and capable person to have the care and custody of her children. Two other witnesses testified on behalf of respondent. Each of them also attested to respondent's capability as a parent.

Respondent first contends on appeal that the trial court did not make specific findings under section 602 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1983, ch. 40, par. 602) and, therefore, it is impossible to determine which factors the court considered in awarding custody of Marcus to the petitioner.

■ Specific findings of fact are not required under section 602 of the Act; however, there must be some indication in the record that the trial court considered the various factors listed. *In re Marriage of Shedbalkar* (1981), 95 Ill. App. 3d 136, 138; *In re Marriage of Kennedy* (1981), 94 Ill. App. 3d 537, 544; *In re Custody of Allen* (1980), 81 Ill. App. 3d 517, 520.

■ From a close review of the record, we find that it adequately reflects that the trial court considered the factors listed in section 602 of the Act in awarding custody. We note, in particular, that the trial judge's letter opinion and his statement during the motion for rehearing reflect that he had considered all of the evidence before finding that it was in the best interest of the child to award custody of Marcus to his father.

■ Respondent next argues that the trial court erred by not requiring a court reporter's presence during the *in camera* interview with Marcus, as mandated under section 604(a) of the Act. (Ill. Rev. Stat. 1983, ch. 40, par. 604(a).) Section 604(a) states:

"The court may interview the child in chambers to ascertain the child's wishes as to his custodian and as to visitation. Counsel shall be present at the interview unless otherwise agreed upon by the parties. The court shall cause a reporter to be present who shall make a complete record of the interview instantaneously to be part of the record in the case." Ill. Rev. Stat. 1983, ch. 40, par. 604(a).

This section authorizes the trial court, in its discretion, to interview the child in chambers. (*In re Marriage of McKeever* (1983), 117 Ill. App. 3d 905, 908.) There, the court can elicit the child's preferences under circumstances free from the pressures and acrimony that prevail in open court. Concurrently, section 604(a) guards the right to appeal by providing for a record of the interview. The record is mandatory and cannot be waived by the parties. (*DeYoung v. DeYoung*

(1978), 62 Ill. App. 3d 837, 841.) It was therefore error to conduct the interview without making a record.

■ However, although it was error, the respondent was not prejudiced in this case by failing to have the *in camera* interview on record. Here, there is ample evidence in the record to provide a means of determining whether the trial court's decision was an abuse of discretion. (*Cf. DeYoung v. DeYoung* (1978), 62 Ill. App. 3d 837, 841-42.) Marcus was able to testify in open court and express his preference to live with his father. Both respondent and petitioner attested to this. Moreover, the right to appeal was also well guarded for the parties had the opportunity in open court to examine Marcus' custodial preference. We find the error was not prejudicial and thus does not require reversal.

■ Respondent next argues that the court should have independently ordered an investigation and report concerning the child custody arrangements as authorized by section 605(a) of the Act. (Ill. Rev. Stat. 1983, ch. 40, par. 605(a).) It is evident that the parties agreed at the temporary custody hearing to an independent investigation. This was incorporated in the August 29, 1983, order. However, from that date until the final custody hearing on May 14, 1984, neither party took action to implement the order. We find that it was not the responsibility of the trial court to insure that the investigation took place.

A report may be used by the trial court as evidence of what an investigator observed and his conclusions concerning custodial arrangements. (*In re Marriage of Theis* (1984), 121 Ill. App. 3d 1092, 1095.) Ordering an investigation and using the report at trial is clearly within the trial court's discretion. (See *DeYoung v. DeYoung* (1978), 62 Ill. App. 3d 837, 841.) In this case, it is apparent that, rather than having an independent investigation, the parties opted to conduct a full hearing on permanent custody based on evidence brought before the court by each party. The court, under these circumstances and under the statute, was not obligated to do more.

■ Respondent then argues that an attorney or guardian *ad litem* should have been appointed to represent the children. We need not address this issue, however, as it has been waived. Review of the record establishes that this issue was never raised in the circuit court. It is axiomatic that points not raised in the trial court are deemed waived and may not be presented for the first time on appeal. *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500; *Nugent v. Miller* (1983), 119 Ill. App. 3d 382, 387.

Respondent next argues that the decision to split custody is con-

trary to the manifest weight of the evidence. We disagree.

 The essential question before the trial court in deciding a custody dispute is the best interest of the children. (Ill. Rev. Stat. 1983, ch. 40, par. 602.) Decisional law has established that it is usually in the best interests of the children that they not be separated. (*In re Marriage of Ford* (1980), 91 Ill. App. 3d 1066, 1072; *In re Marriage of McCune* (1980), 86 Ill. App. 3d 311, 319; *In re Marriage of Lovejoy* (1980), 84 Ill. App. 3d 53, 56.) Separation of the children may, however, occasionally be in the children's best interest. *In re Marriage of Jenkins* (1982), 107 Ill. App. 3d 387, 390; *In re Marriage of Dow* (1978), 64 Ill. App. 3d 177, 180.

 In cases regarding custody, there is a strong and compelling presumption in favor of the result reached by the trial court. (*In re Marriage of Rizzo* (1981), 95 Ill. App. 3d 636, 647.) This is because the trial court, rather than the reviewing court, is in a better position to evaluate the credibility of witnesses and the needs of the children. (*In re Custody of Switalla* (1980), 87 Ill. App. 3d 168, 175.) The award of custody will only be reversed if it is contrary to the manifest weight of the evidence. *In re Marriage of Kennedy* (1981), 94 Ill. App. 3d 537, 545.

 There is sufficient evidence to support the trial court's decision to split custody between the parties and thus we affirm the trial judge's decision. Testimony showed that Marcus and respondent did not get along with each other. There was also evidence that Marcus and his brother frequently fought. Moreover, Marcus testified that he preferred to live with his father. More importantly, the boys, pursuant to the decree, would be spending every weekend together.

 In her next contention, respondent argues that the temporary custodial award of Marcus to petitioner lacks evidence to support the judgment and that the order was deceitfully procured, without any verified petition. However, we find that these contentions are now moot. A temporary order is provisional in character and continues only during the pendency of the action. When the cause is disposed of on its merits, the temporary order has fulfilled the purpose of its creation and is of no further effect. It is superseded by the provisions of the final decree. *Maroney v. Maroney* (1969), 109 Ill. App. 2d 162, 167.

 Respondent finally contends that since the law favors stability in custody, the court should have awarded her custody of Marcus based on a custody agreement made between the parties a year before trial. However, we need not address this issue, for the record shows that the parties merely orally agreed to a temporary custodial

arrangement; they never stipulated to an agreement at trial. Therefore, since there was no agreement ruled on and ordered by the court, this issue has been waived. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500.) Under these circumstances, we conclude that the trial judge did not violate his statutory duty by awarding custody of Marcus to petitioner on the basis of the evidence presented to him.

For the foregoing reasons, the judgment of the circuit court of De-Kalb County is affirmed.

Affirmed.

NASH, P.J., and UNVERZAGT, J., concur.