NOTICE

Decision filed 03/27/06. The text of
this decision may be changed or
corrected prior to the filing of a
Petition for Rehearing or the
disposition of the same.

NO. 5-05-0572

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| *In re* MARRIAGE OF | ) Appeal from the |
| | ) Circuit Court of |
| RONDA L. WANSTREET, | ) Williamson County. |
| | ) |
| Petitioner-Appellee, | ) |
| | ) |
| and | ) No. 03-D-105 |
| | ) |
| JAMES R. WANSTREET, | ) Honorable |
| | ) John Speroni, |
| Respondent-Appellant. | ) Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the opinion of the court:

Petitioner, Ronda L. Wanstreet, filed for a divorce from respondent, James R. Wanstreet. After hearings, the circuit court of Williamson County entered an order awarding petitioner the custody of the children and distributing marital property according to the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 *et seq.* (West 2004)). On appeal, respondent contends that the court (1) erred by not conducting an *in camera* interview, (2) erred by awarding custody to petitioner, and (3) incorrectly determined that certain real estate was marital property. We affirm.

FACTS

On December 22, 1985, the parties to this action were married. The product of their union was two children, S.W., born in 1988, and G.W., born in 1991. The parties divorced in 2005.

Petitioner works full time in addition to taking college classes. Her job often forces her to be away from home for overnight stays. The children had been residing with petitioner

1

at the marital residence during the divorce proceedings. The children attend Marion schools.

Respondent testified that after separating from petitioner he lived in his grandmother's cabin in Franklin County, Illinois, but intended to reside in the Marion school district should he be awarded custody. Respondent worked full time but was off on the weekends.

Neither party contends that the other parent is unfit. Both parties contend they are cooperative. Both parties seek custody.

At the second stage of the dissolution proceedings, respondent requested that the court conduct an *in camera* interview of the two minors. Petitioner requested that any interview be voluntary. The docket sheet indicates that the court originally took the motion for *in camera* interviews under advisement. In a separate docket entry, the court ruled:

"The court has considered the request pursuant to [section 604(a) of the Act (750 ILCS 5/604(a) (West 2004))] to conduct an in camera interview of the parties' minor children, the testimony [and] evidence submitted [at] the 2nd stage hearing, the statute, the applicable law[,] [and] the statements of counsel and finds, in the exercise of the court's discretion, that the request pursuant to [section 604(a)] should be, [and] hereby[] is[,] denied."

The property in dispute on appeal consists of approximately 380 acres of real estate and improvements. It was conveyed under what the parties call the Wanstreet Farms Land Trust (Farm Trust). The Farm Trust was created on October 22, 1990, and respondent was named as the trustee. There were three named beneficiaries in the trust: C. Monette Wanstreet (respondent's mother), Terry L. Wanstreet (respondent's brother), and respondent.

On April 15, 1991, a warranty deed in trust for the farm property was recorded with the office of the recorder for Franklin County. The deed stated:

"THIS INDENTURE WITNESSETH, That the Grantors, James L. Wanstreet,

2

and C. Monette Wanstreet, husband and wife, of the County of Franklin, State of Illinois, for and in consideration of the sum of One Dollar and other good and valuable consideration, CONVEY and WARRANT to James R. Wanstreet, Trustee under a certain Trust Agreement dated the 22nd day of October, 1990[,] and commonly known as Wanstreet Farms Land Trust, the following described real estate ***."

No documentary or transfer stamps are shown on the deed.

Respondent testified that by the time of the dissolution of the marriage, his mother, C. Monette Wanstreet, had conveyed 50% of her interest in the Farm Trust to him. This transfer had taken place in 5% increments over the course of 10 years. Respondent's mother made an "assignment" of 5% of her interest in the Farm Trust once every year beginning in 1991 and ending in 2000. The form used each year read:

"ASSIGNMENT

FOR $1.00 and other good and valuable consideration received, I, C. Monette Wanstreet, being of sound mind, and with full knowledge of the effect of this act, and without any undue pressure from the intended donee, do hereby sell, assign, transfer[,] and set over unto [respondent] 5% of my total beneficial interest and rights, power[,] and privileges in and to that certain trust agreement dated the 22nd day of October, 1990, and commonly known as Wanstreet Farms Land Trust, including my interest in the property held subject to said Trust Agreement."

Respondent testified that the farm property was 380 acres, and he estimated the value of his share of the property at $285,000. He testified regarding the reason for setting up the trust:

"At the time, my father was drinking heavily, had gotten a DUI. My mother was afraid that he would be involved in an accident or do something that would cause him

3

to lose the farm ***."

The trial court entered a judgment awarding petitioner sole custody, subject to visitation rights of respondent, and outlined the schedule of visitation to include weekends, Wednesday evenings, six weeks in the summer, and certain holidays. The court found that respondent had a 50% interest in the Farm Trust, and the court found that this interest was marital property.

ANALYSIS

As a preliminary matter, we must address the timeliness of our opinion. Illinois Supreme Court Rule 306A(f) provides that for final child custody orders:

"(f) Except for good cause shown, the appellate court shall issue its decision within 150 days after the filing of the notice of appeal." Official Reports Advance Sheet No. 8 (April 14, 2004), R. 306A(f), eff. July 1, 2004.

The notice of appeal in this case was filed on September 29, 2005. The circuit court had entered the judgment for the dissolution of the marriage on July 1, 2005. The court affirmed that order and denied all motions for reconsideration on August 31, 2005. The 150-day mark was February 26, 2006. In our court, oral argument was not held until March 9, 2006.

There is good cause for issuing our decision after the 150-day deadline. Both parties requested extensions: on December 1, 2005, respondent filed a motion for an extension of time to file a brief, which was granted without an objection; on January 5, 2006, petitioner filed a motion for an extension of time to file her brief, which was granted without an objection. Both parties requested oral argument, which this court granted. Thus, there is good cause for the timing of our decision, because both parties were given the opportunity to develop and present their positions in briefs and oral argument.

4

## A. Custody

The Act provides:

"Interviews. (a) The court may interview the child in chambers to ascertain the child's wishes as to his custodian and as to visitation. Counsel shall be present at the interview unless otherwise agreed upon by the parties." 750 ILCS 5/604 (West 2004).

The decision of whether to conduct an *in camera* interview is a matter for the trial court's discretion. *In re Marriage of Bates*, 212 Ill. 2d 489, 522, 819 N.E.2d 714, 732 (2004). When a trial court finds good reason not to conduct an *in camera* interview, a reviewing court will not substitute its judgment. *In re Marriage of Johnson*, 245 Ill. App. 3d 545, 554, 614 N.E.2d 1302, 1308 (1993).

In this case, the court was presented with evidence from both parties regarding the interaction of the children with the parents. Respondent bases his call for an *in camera* interview on what he believes were the wishes of the children. His contention that the children would have testified in a way that would have supported his case is speculative. See *In re Marriage of Bates*, 212 Ill. 2d at 522, 819 N.E.2d at 732.

A court does not need to interview a child in order to consider and weigh what it considers to be the wishes of the child. 750 ILCS 5/602(a)(2) (West 2004); *In re Marriage of Hefer*, 282 Ill. App. 3d 73, 76, 667 N.E.2d 1094, 1097 (1996); *In re Marriage of Johnson*, 245 Ill. App. 3d at 555, 614 N.E.2d at 1308; *In re Marriage of Stuckert*, 138 Ill. App. 3d 788, 790, 486 N.E.2d 395, 396 (1985). In this case, the court waited to rule on the motion for an *in camera* interview until after the parties had presented evidence. That patience underscores the sound discretion exercised by the court in the case at hand. See *In re Marriage of Stuckert*, 138 Ill. App. 3d at 790, 486 N.E.2d at 396; *In re Marriage of Padiak*, 101 Ill. App. 3d 306, 315, 427 N.E.2d 1372, 1378 (1981).

Respondent contends that the court erred by awarding petitioner sole custody. Joint parenting likely would be inappropriate in this case. Although there is some indication that the parties can cooperate, the lack of a proposed joint-parenting agreement and the matters contested in litigation indicate that the parties lack the high level of cooperation necessary for successful joint custody. See 750 ILCS 5/602.1 (West 2004); *In re Marriage of Dobey*, 258 Ill. App. 3d 874, 877, 629 N.E.2d 812, 815 (1994). Furthermore, the residential circumstances of the parties weigh against joint custody. See 750 ILCS 5/602.1 (West 2004). Respondent testified that he would move, but the court was free to give little weight to this assertion.

Of most importance, the court determined that awarding petitioner sole custody was in the best interests of the children. The Act sets forth several relevant factors for determining what is in the best interest of a child. 750 ILCS 5/602 (West 2004). The court was presented with conflicting evidence on several factors. Both parents expressed a desire to have custody of the children. Both parents also presented testimony supporting their respective positions that they have positive relationships and interactions with the children. The court was in the best position to evaluate the credibility of the witnesses and weigh the evidence regarding these factors. *In re Marriage of Doty*, 255 Ill. App. 3d 1087, 1097, 629 N.E.2d 679, 685 (1994).

Other factors strongly favor petitioner. The record supports the conclusion that awarding petitioner custody would provide a stability of environment. See *In re Marriage of Hefer*, 282 Ill. App. 3d at 77, 667 N.E.2d at 1097. The children have resided with petitioner since the separation. Respondent was residing outside the school district at the time of the hearings. This supports a finding that awarding custody to petitioner was beneficial to the children's adjustment to their home, school, and community. See 750 ILCS 5/602(a)(4) (West 2004). The court was presented with evidence that petitioner facilitated and

6

encouraged a close relationship with respondent during the period the children had primarily been residing with her. See 750 ILCS 5/602(a)(8) (West 2004). The court's decision regarding the best interests of the children is not against the manifest weight of the evidence. See *Connor v. Velinda C.*, 356 Ill. App. 3d 315, 323, 826 N.E.2d 1265, 1271 (2005). The record supports the court's award of custody.

## B. Property

Respondent contends the court erred by awarding petitioner an interest in the Farm Trust property. In order to dispose of property in a dissolution of marriage, the court must first classify the property as marital or nonmarital. 750 ILCS 5/503 (West 2004); *In re Marriage of Hegge*, 285 Ill. App. 3d 138, 140, 674 N.E.2d 124, 126 (1996). Respondent contends that the Farm Trust property was a gift and, therefore, outside the marital estate.

We first look to the documents transferring interests in the property. Petitioner admits that the farm property was placed in the Farm Trust. She contends, however, that the property became a part of the marital estate through an assignment for consideration. The warranty deed conveyed and warranted the property to the trust "for and in consideration of the sum of One Dollar and other good and valuable consideration." See 26A C.J.S. *Deeds* §31 (2001) (an inadequacy of consideration will not normally affect the validity of a deed). Respondent's mother transferred her interest in the trust property at the rate of 5% a year using a document entitled "ASSIGNMENT." The assignment was "FOR $1.00 and other good and valuable consideration received." Under the assignment, respondent's mother purported to "sell, assign, transfer[,] and set over" her interest. This language indicates an assignment. *Northwest Diversified, Inc. v. Desai*, 353 Ill. App. 3d 378, 387, 818 N.E.2d 753, 761 (2004); *In re Estate of Waggoner*, 5 Ill. App. 2d 130, 139, 125 N.E.2d 154, 158 (1955).

The trial court could have concluded that the plain language of the documents clearly established an assignment for consideration. The court, however, was silent on whether it

considered the contract ambiguous. Certain language gives us pause. Respondent points out that the assignment states that the transfer was made "without any undue pressure from the intended donee." Thus, a look at evidence outside the four corners of the documents appears warranted.

The Act creates a rebuttable presumption that all property acquired after the date of the marriage, but before the entry of the judgment of dissolution, is marital property regardless of how title is held. 750 ILCS 5/503(b) (West 1998). In order to overcome this presumption, the party challenging it must present clear and convincing evidence that the property falls within one of the statutory exceptions listed in the Act. *In re Marriage of Hegge*, 285 Ill. App. 3d at 141, 674 N.E.2d at 126.

On the other hand, a transfer from a parent to a child is presumed to be a gift. *In re Marriage of Hagshenas*, 234 Ill. App. 3d 178, 186, 600 N.E.2d 437, 443 (1992). Normally, this presumption can only be overcome with clear and convincing evidence. *In re Marriage of Heinze*, 257 Ill. App. 3d 782, 790, 631 N.E.2d 728, 734 (1994).

In *In re Marriage of Blunda*, the Second District held that a trial court dividing assets should presume that any transfer from a parent to a child is a gift. *In re Marriage of Blunda*, 299 Ill. App. 3d 855, 866, 702 N.E.2d 993, 1001 (1998). In *In re Marriage of Blunda*, a daughter testified that stock originally owned by her father was a gift to her. The daughter presented her father's filing for a gift tax return. The court found that the trial court had not abused its discretion in awarding the daughter the property, because it had been a gift. The court discussed the presumption of a gift as follows:

> "Property acquired during marriage by means of a gift is to be classified as nonmarital property. [Citations.] In a dissolution of marriage proceeding, there must be proof of donative intent for a gift to be valid. [Citation.] Donative intent is presumed where the transfer of property is from a parent to a child. [Citation.] Thus,

8

it is the burden of the party challenging the gift to present evidence that the parent making the transfer lacked donative intent. A trial court's discretion on such determinations will not be disturbed unless it is contrary to the manifest weight of the evidence. [Citation.]" *In re Marriage of Blunda*, 299 Ill. App. 3d at 866-67, 702 N.E.2d at 1001.

Contrary precedent was set in *In re Marriage of Didier*, 318 Ill. App. 3d 253, 258, 742 N.E.2d 808, 813 (2000). In *In re Marriage of Didier*, the First District discussed both the presumption of a gift when property is transferred from a parent to a child and the presumption that property acquired during the course of a marriage is marital property. *In re Marriage of Didier* found that these conflicting presumptions cancelled each other out. The court stated:

" 'In cases where a determination of the nature of the property at issue [is] found to be subject to these conflicting presumptions, the presumptions are considered to cancel each other out, and a simple manifest weight of the evidence standard is applied. [Citations.]' [Citation.] 'That is, the presumption of a gift to a child is canceled out by the conflicting presumption that all property acquired after marriage is marital property, and, thus, the trial court is free to determine the issue of whether the asset in question was marital or nonmarital property without resort to the presumption.' [Citation.]

Therefore, without the benefit of the presumption of gift, pursuant to statute it was Gail's burden at trial to establish by the manifest weight of the evidence that she acquired the 'property at 4161 Terri-Lyn Lane' as a gift from her father." *In re Marriage of Didier*, 318 Ill. App. 3d at 258-59, 742 N.E.2d at 813.

*In re Marriage of Didier* criticized the lack of analysis in *In re Marriage of Blunda*. *In re Marriage of Didier* stated in a footnote:

"We decline to follow the rule set forth in the recent Second District case of *In re Marriage of Blunda*, 299 Ill. App. 3d 855[, 702 N.E.2d 993] (1998), in which the court held, in reference to a gift during the marriage, that 'it [was] the burden of the party *challenging* the gift to present evidence that the parent making the transfer lacked donative intent.' (Emphasis added.) [Citation.] This ruling fails to consider the effect of the conflicting presumptions of marital property and gift (as set forth in the earlier Second District case of *Hagshenas*, 234 Ill. App. 3d at 186-87[, 600 N.E.2d at 443-44]), which is to negate the otherwise presumed donative intent of the parent[] and reverses the burden of proof. We believe that the better approach in circumstances involving these conflicting presumptions is to require the *proponent*, as the party claiming that property is nonmarital, to prove the elements of gift by the manifest weight of the evidence. [Citations.]" (Emphasis in original.) *In re Marriage of Didier*, 318 Ill. App. 3d at 259 n.1, 742 N.E.2d at 813 n.1.

*In re Marriage of Didier* is the more persuasive precedent. *In re Marriage of Blunda* does not discuss how the presumptions conflict. In contrast, *In re Marriage of Didier* provides sound reasoning for the roles of the presumptions. Because the presumptions conflict, neither party should have to prove his or her case by clear and convincing evidence. See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §302.9 (8th ed. 2004); C. McCormick, McCormick on Evidence §§319, 320 (1954) (contrasting the burden of persuasion by clear and convincing evidence with the burden of preponderance of evidence). This is similar to the approach taken when the presumption of donative intent from the creation of a joint tenancy conflicts with the presumption of fraud in a gift to a fiduciary. *In re Estate of Harms*, 236 Ill. App. 3d 630, 639, 603 N.E.2d 37, 44 (1992); see *In re Estate of Miller*, 334 Ill. App. 3d 692, 701, 778 N.E.2d 262, 269 (2002) (discussing the effect of presumptions when the transfer is after the formation of a fiduciary relationship). As was

10

stated in *In re Estate of Harms*:

"Our view with regard to the application of conflicting presumptions is that they perform a dual role. The presumptions first establish each of the parties' *prima facie* obligation and second negate the necessity for conclusive rebuttal evidence, leaving the trial court free to make a determination based on the facts and credibility of witnesses. [Citations.] The conflicting presumptions cancel each other. Decisions made by the trial court under these circumstances will not be disturbed on review unless they are contrary to the manifest weight of the evidence." *In re Estate of Harms*, 236 Ill. App. 3d at 639-40, 603 N.E.2d at 44.

*In re Marriage of Blunda* relied on our precedent in *In re Marriage of Simmons*, 221 Ill. App. 3d 89, 92, 581 N.E.2d 716, 719 (1991). In *In re Marriage of Simmons*, the trial court found that certain real estate had been transferred by a father to his son as a gift. We affirmed the trial court, stating:

"In a dissolution of marriage proceeding, for a gift to be valid, there must be proof of donative intent. Such intent is presumed where, as here, the transfer is from parent to child. [Citation.] Juli Simmons was required to present sufficient evidence to convince the trial court that Lee Simmons acted without donative intent. [Citation.] The mere execution of a mortgage note is not sufficient to turn nonmarital property into marital property. [Citation.] It has been held that the evidence most relevant in determining donative intent is the donor's own testimony. [Citation.] Lee Simmons' testimony was that he made a gift, and the trial court obviously found this evidence persuasive. We hold that the trial court's ruling that the two tracts of land were nonmarital was not against the manifest weight of the evidence." *In re Marriage of Simmons*, 221 Ill. App. 3d at 92, 581 N.E.2d at 719-20.

*In re Marriage of Simmons* does not stand for the principle that every time a parent

11

transfers property to a child, a court sitting in a divorce action must presume that the transaction was a gift and the presumption can only be overcome by clear and convincing evidence. In *In re Marriage of Simmons* there was competing evidence. The daughter-in-law presented evidence of a mortgage note, but the son presented testimony from his father. *In re Marriage of Simmons*, 221 Ill. App. 3d at 92, 581 N.E.2d at 719. Our decision was based on a failure by the daughter-in-law to counteract the testimony of the transferring father. We found that the evidence presented by the daughter-in-law was insufficient to overcome the testimony of the father.

In re Marriage of Didier* is in accord with *In re Marriage of Simmons* and does not criticize that opinion. Indeed, *In re Marriage of Didier* quotes *In re Marriage of Simmons* for the proposition that the " 'evidence *most* relevant in determining donative intent is the donor's own testimony' (emphasis added)." *In re Marriage of Didier*, 318 Ill. App. 3d at 263, 742 N.E.2d at 816 (quoting *In re Marriage of Simmons*, 221 Ill. App. 3d at 92, 581 N.E.2d at 720). The crucial distinction between the two cases is who testified. In *In re Marriage of Simmons*, the transferring parent testified. In *In re Marriage of Didier*, he did not.

The trial court was free to assume that the testimony of Monette would have been adverse to respondent. Respondent's mother was a missing witness. See Illinois Pattern Jury Instructions, Civil, No. 5.01 (2005) (hereinafter IPI Civil (2005) No. 5.01). Respondent does not contend that it would have taken more than reasonable diligence to present his mother as a witness. See *Coupon Redemption, Inc. v. Ramadan*, 164 Ill. App. 3d 749, 756, 518 N.E.2d 285, 290 (1987). Instead, respondent contends that his mother was equally available to petitioner. This assertion flies in the face of reason. It is settled law that a witness is not equally available to a party if there is a likelihood that the witness would be biased against him, as, for example, a relative of the other party. *Moore v. Bellamy*, 183 Ill. App. 3d 110, 118-19, 538 N.E.2d 1214, 1219 (1989); *Chapman v. Foggy*, 59 Ill. App. 3d 552, 559, 375

12

N.E.2d 865, 870 (1978); IPI Civil (2005) No. 5.01, Comment, at 33.

*In re Marriage of Didier* stands for the proposition that neither party in a dissolution of marriage case must present clear and convincing evidence to overcome a presumption. We agree with *In re Marriage of Didier* that these presumptions cancel each other out and that neither party should have to prove his or her case by clear and convincing evidence. In *In re Marriage of Simmons*, we pointed out that the most relevant evidence is the testimony of the transferring parent. The absence of that testimony in the case at hand could properly be seen as the strongest indication of the nature of the transaction. This does not mean that the testimony of the transferring parent is always necessary to prove that a transfer was a gift. See *In re Marriage of Didier*, 318 Ill. App. 3d at 258, 742 N.E.2d at 813; *In re Marriage of Blunda*, 299 Ill. App. 3d at 866, 702 N.E.2d at 1001 (tax filings for a gift). In this case, however, there is no strong evidence of a gift, and the language transferring the interest suggests an assignment for value. Thus, we cannot say the court's decision was against the manifest weight of the evidence.

CONCLUSION

Accordingly, the order of the circuit court is hereby affirmed.

Affirmed.

CHAPMAN and HOPKINS, JJ., concur.

13

NO. 5-05-0572

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

<table>
<tr><td><em>In re</em> MARRIAGE OF</td><td>)</td><td>Appeal from the</td></tr>
<tr><td></td><td>)</td><td>Circuit Court of</td></tr>
<tr><td>RONDA L. WANSTREET,</td><td>)</td><td>Williamson County.</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Petitioner-Appellee,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>and</td><td>)</td><td>No. 03-D-105</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>JAMES R. WANSTREET,</td><td>)</td><td>Honorable</td></tr>
<tr><td></td><td>)</td><td>John Speroni,</td></tr>
<tr><td>Respondent-Appellant.</td><td>)</td><td>Judge, presiding.</td></tr>
</table>

**Opinion Filed**:     March 27, 2006

**Justices**:     Honorable Richard P. Goldenhersh, J.

Honorable Melissa A. Chapman, J., and
Honorable Terrence J. Hopkins, J.,
Concur

**Attorney**     Frederick Turner, Jr.
**for**     P.O. Box 512
**Appellant**     Golconda, IL 62938

**Attorney**     Joshua M. Bradley, Law Offices of Harvey & Bradley, LLC, 2029 Broadway,
**for**     Mt. Vernon, IL 62864
**Appellee**