**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200191-U

Order filed August 13, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 9th Judicial Circuit, |
| MICHELLE T. ANDERSON | ) | Knox County, Illinois, |
| n/k/a MICHELLE T. MUSTAIN, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | Appeal No. 3-20-0191 |
| | ) | Circuit No. 15-D-138 |
| and | ) | |
| | ) | |
| BRYAN C. ANDERSON, | ) | Honorable |
| | ) | James G. Baber, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Schmidt and Wright concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: The court's decisions regarding decision-making and parenting time were not against the manifest weight of the evidence. The court did not abuse its discretion in denying the request for an *in camera* interview. Michelle failed to show a change in Bryan's child support payments.

¶ 2    The petitioner, Michelle T. Anderson, challenges the circuit court's decision that awarded the respondent, Bryan C. Anderson, an increase in parenting time and joint decision-making as to the healthcare decisions and extracurricular activities of their children.

¶ 3                                    I. BACKGROUND

¶ 4        Michelle and Bryan were married in October 2002, and had three children together, O.A., C.A., and E.A. In August 2015, Michelle filed a petition for dissolution of marriage under the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 2020)) (Act), citing irreconcilable differences. On November 17, 2016, the circuit court entered a judgment for dissolution of marriage, which required Bryan to pay bi-weekly child support. A stipulated order was entered regarding the allocation of parental responsibilities and parenting time after the parties attended mediation. The order named Michelle as the residential parent and Bryan as the non-residential Parent. Bryan's parenting time was every other weekend from Friday night until Sunday at 5:00 p.m., one overnight during the week, and one night a week from 5:00 p.m. to 7:30 p.m. Michelle was given the right to make final decisions as to any educational, medical, or religious issues regarding the children.

¶ 5        On March 15, 2018, Bryan filed a petition to modify allocation of parenting time and parental responsibilities, which he later supplemented. Bryan sought to become the residential parent and the sole decision-maker and asked the court to change his child support obligation if it modified his parenting time. On June 25, 2018, Michelle filed an emergency petition to restrict parenting time. The petition stated that the children's health and well-being was endangered while in the care of Bryan. A *guardian ad litem* (GAL) was appointed for the children on August 17, 2018, at Michelle's request. The GAL recommended that Bryan have sole decision-making and majority parenting time. The GAL met with each of the children three times. O.A. reportedly told her that he wanted the schedule to stay the same and remained consistent through all meetings. C.A. originally reported to the GAL that she wanted the schedule to remain the same. During the second meeting C.A. told her that she only wanted to stay with Bryan every other weekend. By

2

the third meeting, C.A. told her she did not want to have any overnights with Bryan. The first time E.A. met with the GAL, he told her he wanted more overnights with Bryan, instead of the 2 ½ hour visits during the week. At the second meeting E.A. would not talk to the GAL, but at the third meeting, he wanted no overnight visits and only wanted "dinner and homework nights" about five times a month.

¶ 6    Michelle filed a motion to conduct an *in camera* interview of the children, which the court denied. In doing so, the court stated that the GAL spoke with the children on three occasions, and her report recited what the children told her, even though the GAL's recommendation was against what the children reportedly told her. The court stated that the children had been subjected to enough already and speaking to them would not be so helpful as to overcome the stress to them by bringing them to court. The court also stated that it would revisit the issue at the end of trial if necessary.

¶ 7    Testimony on all pending motions was heard over the course of several days between September 2019 and March 2020, the transcripts of which amount to approximately 2000 pages. The court issued a letter opinion on April 22, 2020, the beginning of which gave a succinct statement regarding the tenor of this case:

> "In general, the Court was rather liberal in admitting evidence on the basis that testimony or documents admitted could be given the weight and credibility deserved. This was also done to allow the Court to try and get a broad perspective of the overall tenor of the case and be able to at least view those documents which were provided to the [GAL].
>
> If the Court were to sum this case up in one word, that word would be frustration. [Michelle], [Bryan], the [GAL], the Attorneys, the Court, and even the

children, as the Court sees it, are frustrated by this case in some way. Unfortunately, the decision of this Court will not relieve that frustration for everyone involved. [Michelle] and [Bryan] fundamentally disagree on many things involving the children and the probability of their differences changing by this Court's order anytime soon is questionable. They also don't appear to like or trust each other and have each done hurtful things to the other apparently in order to try and gain some sort of advantage, or at least have the satisfaction of knowing the other party suffered."

¶ 8 The court ultimately denied Michelle's request for Bryan to have restricted parental responsibilities, finding that the evidence against either party was not so extreme as to warrant any restrictions pursuant to section 603.10 of the Act. The court found that a substantial change in circumstances had occurred. It then listed and considered the best interests factors contained in sections 602.5 and 602.7 regarding parenting time and decision-making. The court found that the children had been affected adversely by Michelle having sole decision-making regarding healthcare decisions, noting that she tended to overreact in non-emergency medical situations and sought treatment for the children without first consulting with Bryan, and therefore, ordered joint decision-making as to healthcare decision. The court found Michelle was more available to meet the children's daily needs, so she remained the residential parent. The court further stated that the parties would have joint decision-making regarding extracurricular activities, which has not been decided previously.

¶ 9 The court noted that the parenting time order was entered at a time when the parties lived in close proximity to each other but Michelle's move to Geneseo "created issues with [Bryan's] 2 ½ [hour] parenting time each week and travel time in general." The court modified the order,

removing the 2 ½ hour time and revising the previous order, giving Bryan alternate weekends from Friday night to Monday morning, one overnight during the week, and four uninterrupted non-consecutive weeks of parenting time during summer school break. Thus, the revision provided more parenting time (particularly more overnights) for Bryan. The court further stated that "The parties shall calculate Respondent's child support obligations based upon his number of overnights pursuant to the order to be entered as a result of this Letter Opinion." Michelle filed a motion to reconsider, which was denied.

¶ 10                                   II. ANALYSIS

¶ 11          On appeal, Michelle raises nine issues. However, we note that many of Michelle's arguments are undeveloped or unsupported by authority. "This court is not a repository for an appellant to foist the burden of argument and research." *Graham v. Lakeview Pantry*, 2019 IL App (1st) 182003, ¶ 26. We, therefore, find that Michelle has forfeited these arguments. See *id.*; Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Thus, our review is limited to the following arguments that she has not forfeited: (1) the court erred in awarding joint decision-making where its conclusion was inconsistent with its findings of fact; (2) the court erred in refusing to grant an *in camera* interview of the children; (3) the court erred in not giving the children's wishes significant weight as to parenting time; (4) the court erred by failing to impose restrictions on Bryan's parenting time; and (5) the court erred by ordering a modification of child support.

¶ 12          Before turning to the merits of the appeal, we must note that Bryan did not file an appellee's brief. Nonetheless, we will decide the merits of the appeal, as the issues can be easily decided without an appellee's brief. *People ex rel. Director of Dept. of Corrections v. Booth*, 352 Ill. App. 3d 297, 299 (2004).

¶ 13    First, Michelle argues that the court erred in awarding joint decision-making where its conclusion was inconsistent with its findings of fact. Specifically, Michelle states that the court should not have given joint decision-making where it is clear that the parties cannot cooperate and have exchanged abusive language. We note that Michelle specifically states that she agrees with the circuit court's findings of fact but believes that the conclusion was inconsistent with the findings.

¶ 14    The court shall modify an order allocating parental decision-making responsibilities, upon a finding of a substantial change in circumstances and that a modification is necessary to serve the child's best interests. 750 ILCS 5/610.5(c) (West 2020). To make such a decision, the court must consider all relevant factors including the 15 factors set forth in section 602.5(c) of the Act. 750 ILCS 5/602.5(c) (West 2020). We will not disturb the court's ruling unless it is against the manifest weight of the evidence. *Young v. Herman*, 2018 IL App (4th) 170001, ¶ 64. A decision is only against the manifest weight of the evidence if the opposite conclusion is clearly apparent or the findings are unreasonable, arbitrary, or not based on the evidence. *In re Marriage of Verhines*, 2018 IL App (2d) 171034, ¶ 51. The court need not make explicit findings on each factor or refer to each factor. *In re Marriage of Diehl*, 221 Ill. App. 3d 410, 424 (1991). "[T]here is a strong and compelling presumption in favor of the result reached by the trial court because it is in a superior position to evaluate the evidence and determine the best interests of the child." *In re Marriage of Agers*, 2013 IL App (5th) 120375, ¶ 25.

¶ 15    Michelle does not argue that a substantial change in circumstances did not occur. The ability of the parties to cooperate or the level of conflict between the parties is only one of many factors for the court to consider. The court did consider the fact that the parties have not cooperated and have had a contentious relationship. Nonetheless, it noted that, though Michelle originally had

6

sole decision-making as to the healthcare decisions, the order required her to consult with Bryan before making any decisions, which she failed to do multiple times. Moreover, the court noted that Michelle tended to catastrophize when it came to the children, which negatively affected the children and their relationship with Bryan. The court stated "[Bryan] has essentially been told what health decision has been made either in an email from [Michelle] or by receiving an explanation of benefits from a provider, and this concern overrides the parties' inability to effectively communicate, which will hopefully now change by necessity." It is not our function to reweigh the evidence (*Jameson v. Williams*, 2020 IL App (3d) 200048, ¶ 51), and we cannot say that the court's decision to allocate joint decision-making was against the manifest weight of the evidence.

¶ 16        Second, Michelle argues that the court erred in denying her motion to grant an *in camera* interview of the children. Section 604.10(a) of the Act states, "The court may interview the child in chambers to ascertain the child's wishes as to the allocation of parental responsibilities." 750 ILCS 5/604.10(a) (West 2020). "A court does not need to interview a child in order to consider and weigh what it considers to be the wishes of the child." *In re Marriage of Wanstreet*, 364 Ill. App. 3d 729, 733 (2006). "Illinois courts have repeatedly held that the matter of *in camera* interviews is within the discretion of the trial court. When the trial court determines that good reason exists not to conduct such an interview, a reviewing court will not substitute its judgment for that of the trial judge." *In re Marriage of Johnson*, 245 Ill. App. 3d 545, 544 (1993).

¶ 17        Here, the court stated, "these kids have been subjected to enough already and my speaking to them would not be so helpful as to overcome the stress involved to them in bringing them to court to talk to me." The court noted that it was aware of the children's preferences based on the interviews from the GAL, and, as Michelle notes in her brief, she also made the court aware of the children's preferences. The court also stated that it would reopen the issue at the end of the hearing

7

if it found it needed more information regarding the children's preferences, which it ultimately found unnecessary. We find no abuse of discretion in the court's reasoning. See *Grunstad v. Cooper*, 2012 IL App (3d) 120524, ¶ 23.

¶ 18    Third, Michelle argues that the court erred in not giving the children's wishes significant weight regarding parenting time. Parenting time may be modified upon a showing of a change in circumstances such that modification would serve the best interests of the children. 750 ILCS 5/610.5(a) (West 2020). The court found that a change of circumstances occurred, which Michelle does not dispute on appeal. When considering the best interests of the children, the court considers all the relevant factors, including the 17 factors set forth in section 602.7(b) of the Act. 750 ILCS 5/602.7(b) (West 2020).

¶ 19    Again, the children's wishes is only one of the many factors for the court to consider when determining the best interests of the children. Michelle's argument essentially asks us to reweigh the evidence and witness credibility, which we will not do. *In re Marriage of Pfeiffer*, 237 Ill. App. 3d 510, 513 (1992). It is clear that the court weighed all of the factors, including the children's wishes, when determining the allocation of parenting time. Two of the children changed their story through the interviews with the GAL, from wanting time with both Michelle and Bryan to decreasing the amount they wanted to spend with Bryan. The GAL intimated that she felt that the children were coached by Michelle to say that they wanted to spend less time with Bryan. The court considered all the information presented to it and found that the 2 ½ hour weeknight parenting time was not working, considering that Michelle moved an hour away and refused to meet Bryan halfway, and Bryan was having to drive to Geneseo and spend 2 ½ hours at a restaurant or community center. The court's modification of parenting time was not unreasonable or against

8

the manifest weight of the evidence. *In re Marriage of Whitehead*, 2018 IL App (5th) 170380, ¶ 21.

¶ 20 Fourth, Michelle argues that the court erred in failing to impose restrictions on Bryan's parenting time. Section 603.10(a) states, "After a hearing, if the court finds by a preponderance of the evidence that a parent engaged in any conduct that seriously endangered the child's mental, moral, or physical health or that significantly impaired the child's emotional development, the court shall enter orders as necessary to protect the child." 750 ILCS 5/603.10(a) (West 2020). The seriously endangered standard is " 'onerous, stringent, and rigorous' to meet because liberal visitation is the rule and restricted visitation is the exception." *Heldebrandt v. Heldebrandt*, 251 Ill. App. 3d 950, 957 (1993) (quoting *In re Marriage of Diehl*, 221 Ill. App. 3d 410, 429 (1991)). Circuit courts are vested with wide discretion in resolving parenting time issues, and a court's decision on parenting time issues will not be overturned on appeal unless it is against the manifest weight of the evidence. *In re Marriage of Mayes*, 2018 IL App (4th) 180149, ¶¶ 57, 59. As the court stated, some of the instances Michelle complained of were never proven. While Bryan may not give as much credence to all the medical issues Michelle foresees, it is clear that Michelle tends to overreact to issues that are not emergencies. Moreover, both parties seem to try to poison the children's views of the other. We cannot say that it was against the manifest weight of the evidence for the court to find that Bryan's conduct did not seriously endanger the children.

¶ 21 Lastly, Michelle argues that the court erred in modifying Bryan's child support obligation. While the court stated that the child support would be calculated based on the number of overnights, Michelle has not included any order on appeal that modified Bryan's child support obligation. Without such an order, we do not know that Bryan's child support obligation actually

changed. We construe any deficiencies in the record against Michelle and find no error. *McGee v. Kelley*, 2017 IL App (3d) 160324, ¶ 21.

¶ 22                              III. CONCLUSION

¶ 23          The judgment of the circuit court of Knox County is affirmed.

¶ 24          Affirmed.